O

# United States District Court
# Central District of California

| | |
|---|---|
| ARMANDEEP KAUR,<br><br>        Petitioner,<br><br>    v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY ET AL.,<br><br>        Respondents. | Case No. 2:20-cv-03172-ODW (MRWx)<br><br>**ORDER GRANTING APPLICATION FOR TEMPORARY RESTRAINING ORDER [5] AND**<br>**ORDER TO SHOW CAUSE** |

## I. INTRODUCTION

Before the Court is Petitioner Armandeep Kaur's ("Petitioner") *Ex Parte* Application for Temporary Restraining Order ("TRO," ECF No. 5), seeking an order directing her immediate release from Adelanto Processing Center in light of the serious threats to her health and safety posed by the current COVID-19 pandemic. Respondents U.S. Department of Homeland Security *et al.* ("Respondents") filed an Opposition to Petitioner's TRO. (Opp'n to TRO ("Opp'n"), ECF No. 10.) The Court has considered Petitioner's TRO and Respondents' Opposition. For the reasons to follow, the Court **GRANTS** Petitioner's TRO.

## II. BACKGROUND

Petitioner Armandeep Kaur ("Petitioner") is a non-citizen who fled India with her husband due to political persecution. (Pet. ¶¶ 1, 15, ECF No. 1.) She sought

asylum in the United States and was taken into custody by U.S. Customs and Border Protection Officers on October 8, 2019. (Pet. ¶¶ 14–15.) Although her husband received a credible fear determination and was released on bond, Petitioner received a negative credible fear determination and was ordered removed. (Pet. ¶¶ 2–4, 15.) Petitioner has remained detained at the Adelanto Processing Center since October 8, 2019. (Pet. ¶ 1.) Petitioner suffers from Piles Disease, severe depression, and has recently suffered significant weight loss and fainting resulting in her hospitalization. (TRO 3, 5.)

On April 6, 2020 Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition"). (*See* Pet.) The Court granted an emergency stay of Petitioner's deportation and removal to India, pending resolution of her Petition. (ECF No. 3.) On April 17, 2020, Petitioner filed the instant TRO application, asking the Court to "issue a temporary restraining order directing the Respondents to immediately release the Petitioner," in light of the serious risks to her health and safety posed by the COVID-19 pandemic. (TRO 2, 24.)

Adelanto Processing Center ("Adelanto"), located in San Bernardino, California, is a privately owned and operated immigration facility run by the GEO Group on behalf of U.S. Immigration and Customs Enforcement. (TRO 5.) Petitioner asserts it can hold over 1600 detainees, is "crowded," and has been cited for its "inability to give adequate medical care even in the best of times." (TRO 9, 11.) Indeed, courts have recognized that "[o]ver the years, and as recently as 2018, DHS's Office of the Inspector General had, repeatedly, found that significant and various health and safety risks existed at Adelanto." *Castillo v. Barr*, No. CV 20-00605-TJH (AFMx), 2020 WL 1502864, at *1 (C.D. Cal. Mar. 27, 2020). Respondents state they have recently implemented precautions in light of the COVID-19 pandemic, including voluntarily reducing the population size, housing new arrivals separately from the general population for fourteen days, and housing detainees in cohorts, among other

things. (Opp'n 1, 3–8.) Respondents assert that, as of April 18, 2020, Adelanto has no confirmed cases of COVID-19. (Opp'n 1, 16.)

### III. LEGAL STANDARD

A TRO is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). The standard for issuing a temporary restraining order is "substantially identical" to that for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Pursuant to Federal Rule of Civil Procedure 65, a court may grant preliminary injunctive relief to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b). To obtain this relief, a plaintiff must establish the "*Winter*" factors: (1) "he is likely to succeed on the merits"; (2) "he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in his favor"; and (4) "an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20). "Where the government is a party to a case in which a preliminary injunction is sought, the balance of the equities and public interest factors merge." *Padilla v. Immigration & Customs Enf't*, 953 F.3d 1134, 1141 (9th Cir. 2020).

In the Ninth Circuit, the *Winter* factors may be evaluated on a sliding scale: "serious questions going to the merits, and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted). The issuance of a temporary restraining order may not exceed fourteen days "unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension." Fed. R. Civ. Proc. 65(b)(2).

## IV. DISCUSSION

The World Health Organization has designated COVID-19 a global pandemic. The State of California has declared a state of emergency. The President of the United States has declared a national emergency. On March 10, 2020, San Bernardino County, where Adelanto is located, also declared a state of emergency in response to the coronavirus and resulting COVID-19 pandemic.

The Centers for Disease Control and Prevention ("CDC") reports that COVID-19 spreads easily and sustainably from person to person, and even asymptomatic infected people can spread the virus. *See Doe v. Barr*, No. 20-CV-02141-LB, 2020 WL 1820667, at *2 (N.D. Cal. Apr. 12, 2020) (citing CDC reports and courts' discussions concerning COVID-19). It can survive on surfaces for days and spreads more quickly in confined spaces. *Id.*; *Castillo*, 2020 WL 1502864, at *2. The CDC reports that certain people, those over 65 and people with underlying health conditions or weakened immunity, are more likely to suffer severe illness or die from COVID-19. *See Perez v. Wolf*, No. EDCV 19-05191-EJD, 2020 WL 1865303, at *11 (N.D. Cal. Apr. 14, 2020) (discussing CDC guidance). There is no approved vaccine to prevent infection. *Doe*, 2020 WL 1820667, at *2. The CDC has directed people to stay home, practice social distancing (staying six feet apart from other people), and increase hand-washing and sanitizing of surfaces to prevent infection. *Id.*

Significantly, the Ninth Circuit has recognized, in ordering the release of an immigration petitioner, that "the rapidly escalating public health crisis . . . will especially impact immigration detention centers." *Xochihua-Jaimes v. Barr*, 798 F. App'x 52, 52 (9th Cir. Mar. 24, 2020).

Petitioner argues that continued detention in light of the serious threat to her health and safety posed by COVID-19 violates the Due Process Clause. (TRO 2–5.) She argues she faces irreparable harm and that the balance of equities is in her favor where her release prevents human suffering and reduces the risk of an outbreak. (TRO 21–24.) Respondents oppose and argue that Petitioner (1) may not challenge

the conditions of her confinement through a habeas petition; (2) lacks standing because her alleged injury is too speculative, and (3) has failed to show that she is entitled to a TRO. (*See* Opp'n 1–3, 10–25.)[1]

First, the Court can address Petitioner's challenges to the conditions of confinement in a habeas petition. *See Perez*, 2020 WL 1865303, at *12. Habeas corpus relief is appropriate when a person is "in custody in violation of the Constitution or laws or treaties of the United states." 28 U.S.C. § 2241(c)(3). Habeas corpus proceedings are "available as a forum for statutory and constitutional challenges" to the authority of the Attorney General to order detention of a person. *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001). As Petitioner contends that her continued detention during the COVID-19 pandemic violates her substantive due process rights, "[t]his is patently a 'challenge[] to the validity' of [her] confinement." *Bent v. Barr*, No. 19-CV-06123-DMR, 2020 WL 1812850, at *2 (N.D. Cal. Apr. 9, 2020) (quoting *Muhammad v. Close*, 540 U.S. 749, 750 (2004) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus.")).

Second, Petitioner has standing. The risk of injury from COVID-19 is not speculative. COVID-19 infections are rapidly increasing in the United States, including in California and San Bernardino, and "when introduced into a confined space" such as a jail or detention center "it can rapidly spread." *Ortuno v. Jennings*, No. CV 20-02064-MMC, 2020 WL 1701724, at *2 (N.D. Cal. Apr. 8, 2020.) The Court recognizes that Respondents have implemented precautionary measures at Adelanto, but they fail to address the serious risk of spread by asymptomatic carriers, other than by "cohorting" groups of detainees that have been identified as exposed.

---

[1] To the extent Respondents argue that Petitioner is absolutely prohibited from seeking release because she is mandatorily detained under 8 U.S.C. § 1226(c) (Opp'n 18–19), "courts have the authority to order those detained in violation of their due process rights released, notwithstanding § 1226(c)." *Basank v. Decker*, No. 20 CIV. 2518 (AT), 2020 WL 1481503, at *6 (S.D.N.Y. Mar. 26, 2020); *see also Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018).

Thus, the risk remains and Petitioner's injury is not speculative. "Courts fielding habeas petitions in the wake of the escalating pandemic have rejected similar standing arguments, even when there is no evidence that a particular detention facility has detected a confirmed case of the virus." *Bent*, 2020 WL 1812850, at *3 (collecting cases) ("It is unquestionable that COVID-19 is spreading through ICE detention facilities despite Respondents' precautions.").

Third, as discussed below, Petitioner has demonstrated that injunctive relief is warranted.

## A. Irreparable Harm

Petitioner must demonstrate a "probability of irreparable harm" if relief is not granted. The risk of irreparable harm must be "likely, not just possible." *All. for the Wild Rockies*, 632 F.3d at 1131. Respondents argue that Petitioner's alleged harm is merely speculative because Respondents have implemented precautions at Adelanto and there are currently no COVID-19 cases identified there. (Opp'n 21–23.) However, courts considering the issue have rejected these arguments as "miss[ing] the point." *See, e.g.*, *Perez*, 2020 WL 1865303, at *12. "COVID-19 is a highly contagious and novel coronavirus. The mere fact that no cases have been reported in the [facility at issue] is irrelevant—it is not a matter of *if* COVID-19 will enter the facility, but *when* it will be detected there." *Id.* (citation omitted) (collecting cases). "Even in the early days of the pandemic, and with few exceptions, courts did not hesitate to find irreparable harm as a result of potential COVID-19 exposure in prison and detention, including in facilities where there had not been a confirmed case. At this stage of the pandemic, the threat is even clearer." *Fraihat v. U.S. Immigration and Customs Enf't*, No. EDCV 19-01546-JGB (SHKx), ECF No. 132 at 36 (C.D. Cal. April 20, 2020) (Order Granting Pls.' Mot. Prelim. Inj.).

Respondents also argue that Petitioner is not in the "high-risk" category because she presents no evidence of her asserted medical conditions other than her attorney's declaration. (Opp'n 22.) The Court finds this argument unpersuasive. Courts in this

Circuit and across the country have recognized that the risk posed in immigration detention facilities of contracting and dying from the virus is so severe that it constitutes an irreparable harm supporting a TRO. *See Xochihua-Jaimes*, 798 F. App'x at 52; *Perez*, 2020 WL 1865303, at *13; *Doe*, 2020 WL 1820667, at *10; *Castillo*, 2020 W 1502864, at *6; *Basank*, 2020 WL 1481503, at *4. The Court agrees.

Finally, as discussed in the next section, Petitioner has established "[t]he threat of unconstitutional detention [which] on its own constitutes an irreparable injury." *Bent*, 2020 WL 1812850, at *6 (citing *Hernandez v. Sessions*, 872 F.3d 976, 994 (2017)); *see also Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (internal quotation marks omitted) ("It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury.").

### B.     Likelihood of Success on the Merits

To bring a Fifth Amendment due process claim, Petitioner must show that the conditions of her confinement "amount to punishment." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Conditions amounting to punishment occur "(1) where the challenged restrictions are expressly intended to punish, or (2) where the challenged restrictions serve an alternative, non-punitive purpose but are nonetheless excessive in relation to the alternative purpose, or are employed to achieve objectives that could be accomplished in . . . alternative and less harsh methods." *See Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004) (internal quotation marks and citation omitted).

Respondents argue that Petitioner fails to establish that her detention amounts to punishment in violation of the Fifth Amendment. However, the Court finds the conditions of continued confinement in light of the severe risks posed by the COVID-19 pandemic are excessive in relation to Respondents' objectives. Respondents have a legitimate, non-punitive interest in ensuring individuals in removal proceedings appear for hearings and in protecting the public. *Padilla*, 953 F.3d at 1143; *Jones*, 393 F.3d at 932. "However, attendance at hearings cannot be

secured reliably when the detainee has, is at risk of having, or is at risk of infecting court staff with a deadly infectious disease with no known cure." *Fraihat*, No. EDCV 19-01546-JGB (SHKx), ECF No. 132 at 34.

Courts have recognized that the risk of infection and severe illness or even death is high, especially in facilities like Adelanto. *See, e.g.*, *Xochihua-Jaimes*, 798 F. App'x at 52 ("[T]he rapidly escalating public health crisis . . . will especially impact immigration detention centers . . . ."); *Castillo*, 2020 WL 1502864, at *5 ("Under the Due Process Clause, a civil detainee cannot be subject to the current conditions of confinement at Adelanto.") Respondents contend the precautions they've implemented at Adelanto in recent weeks facilitate social distancing and increased sanitization, but nothing prevents asymptomatic staff from transmitting the disease to detainees and detainees necessarily remain housed in cohorts and share cramped living, dining, and restroom quarters. Petitioner asserts it is not possible to practice meaningful social distancing, that she does not have consistent access to basic hygiene supplies, including hand sanitizer, and that Adelanto staff are not consistently observed practicing proper hygiene or care. Such communal confined conditions increase the risk of spreading COVID-19, such that Petitioner cannot meaningfully protect herself at Adelanto from the risks imposed by detention.

Respondents acknowledge they have alternate means of ensuring Petitioner's appearance at removal proceedings. (*See* Opp'n 25 (requesting conditions be imposed on Petitioner's release if TRO is granted, including disclosure of residence and location monitoring).) Further, Petitioner has no criminal history and nothing indicates she poses a flight risk or a danger to the community. Indeed, courts have ordered immigration detainees released even where these factors were present. *See Perez*, 2020 WL 1865303, at *13 (granting TRO for release despite evidence that petitioner posed a danger to the community); *Bent*, 2020 WL 1812850, at *6 (granting TRO for release despite petitioner's criminal history and risk of flight).

Accordingly, the Court finds that Petitioner's detention, in light the serious risks to her health and safety posed by the escalating public health crisis, is "excessive in relation to [its] purpose" and may be "accomplished in . . . alternative and less harsh methods." *Jones*, 393 F.3d at 932. Thus, this factor weighs in favor of Petitioner.

### C. Balance of Equities/Public Interest

The last factors—the balance of equities and whether an injunction is in the public interest—merge. *Padilla*, 953 F.3d at 1141. The public's interests are containing COVID-19, securing Petitioner's appearance in her immigration proceedings, and preventing any danger to the community. *See Bent*, 2020 WL 1812850, at *7. Under the circumstances, the balance of equities and the public interest favor release. "Faced with . . . preventable human suffering, [the Ninth Circuit] ha[s] little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor." *Hernandez*, 872 F.3d at 996. Also, as noted, Petitioner does not have a criminal record and nothing indicates she poses a flight risk or a danger to the community. Respondents recognize that release of immigration detainees in light of COVID-19 may be appropriate where "the petitioner was not found to be a flight risk or danger to the community. (Opp'n 24.) Further, Respondents have available alternative measures to ensure Petitioner's appearance that do not violate her constitutional rights. And, of course, Petitioner's failure to appear at her immigration proceedings would carry grave consequences for her case.

In the highly unusual circumstances posed by the COVID-19 crisis, the continued detention of civil detainees like Petitioner does not serve the public's interest. "To the contrary, public health and safety are served best by rapidly decreasing the number of individuals detained in confined, unsafe conditions." *Basank*, 2020 WL 1481503, at *6; *see also Doe*, 2020 WL 1820667, at *11 ("Injunctive relief that prevents the further spreading of the virus and allows social distancing is in the public's interest."). Accordingly, this factor also weighs in favor of granting the TRO.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** Petitioner's application for a temporary restraining order. (ECF No. 5.)

The Court further **ORDERS** that Respondents shall, **by 5:00 p.m. on April 23, 2020**, release Petitioner from custody pending further order of this Court, and subject to the following conditions of release:

(1) Petitioner shall disclose where she will reside and shelter-in-place;

(2) Petitioner shall disclose how she will be transported from Adelanto directly to that disclosed residence;

(3) Petitioner shall remain at that residence, pending further order of the Court, except to obtain medical care;

(4) Petitioner shall not violate any federal, state, or local laws;

(5) At the discretion of Respondents, to enforce the above restrictions, Petitioner's whereabouts may be monitored by telephonic and/or electronic and/or GPS monitoring and/or a location verification system and/or an automated identification system. If necessary to comply with the permitted monitoring, Petitioner shall ensure the presence of a residential telephone line without devices and/or services which may interrupt operation of any monitoring equipment.

This TRO will expire on May 6, 2020. Respondents shall **SHOW CAUSE**, if any, as to why the Court should not convert this TRO to a preliminary injunction in this case. Respondents' Response, if any, to this order to show cause shall be filed by 5:00 p.m. on April 29, 2020. Petitioner must file a response by May 4, 2020.

**IT IS SO ORDERED.**

April 22, 2020

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**